FILED

07 JUN 14 PM 4:20

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP K. PAULSON | ) |
| | ) Civ. No. 89-0820GT(LSP) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| CITY OF SAN DIEGO, MOUNT SOLEDAD MEMORIAL ASSOCIATION, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

On May 21, 2007, Plaintiff's, Philip K. Paulson ("Mr. Paulson"), Motion for Attorney Fees and Costs came on for hearing before the Court. The Court has fully considered this matter, including the briefs filed, the authorities cited therein and the arguments presented. For the reasons stated below, Mr. Paulson's Motion for Attorney fees and Costs is **GRANTED.**

All the parties are well versed in the facts and protracted procedural history of this case. Therefore, the Court will not reiterate those facts or history here.

//

1

## CONCLUSIONS OF LAW

2

**A. State Law Controls The Award of Attorney's Fees in this Case**

3      In diversity actions and cases of pendant jurisdiction, the Ninth Circuit utilizes

4   substantive state law for determining both the right to attorney fees and the method of

5   calculating those fees. <u>Mangold v. California Public Utilities Com'n</u>, 67 F.3d 1470, 1478 (9th

6   Cir. 1995). The issues in this case were decided entirely on California constitutional law.

7   Additionally, Mr. Paulson asserts that state law applies for the award of attorney's fees and the

8   Defendant, the City of San Diego ("City") does not argue against this assertion. Hence, the

9   Court is utilizing state law for the determination of attorney's fees in this case.

10   **B. Private Attorney General Doctrine**

11      Generally, under the American rule, litigants are to bear their own attorney fees and costs.

12   The exception to this general rule is the Private Attorney General Doctrine which has been

13   codified in California Code of Civil Procedure § 1021.5.  Under this section, the Court may

14   award attorney's fees to the

15      "successful party. . .in any action which has resulted in the enforcement of an important
      right affecting public interest if: (a) a significant benefit, whether pecuniary or non-
16      pecuniary, has been conferred on the general public or a large class of persons, (b) the
      necessity and financial burden of private enforcement. . .are such as to make the award
17      appropriate, and (c) such fees should not in the interest of justice be paid out of the
      recovery, if any. . . ."
18   Cal. Civ. Pro. § 1021.5

19   The fundamental objective of this section and the doctrine in general is to "encourage suits

20   enforcing important public policies by providing substantial attorney fees to successful litigants

21   in such case." <u>Graham v. DaimlerChryseler Corp.</u>, 34 Cal.4th 553 (2004); <u>Maria P. V. Riles</u>,

22   43 Cal.3d 1281 (1987).

23      Essentially, the sole issue before the Court on the entitlement to fees is whether or not

24   Mr. Paulson is the "successful party" for the purpose of § 1021.5.  Mr. Paulson asserts he is the

25   "successful party" under § 1021.5 and that the catalyst theory further supports this claim.  The

26   City argues that Mr. Paulson has not succeeded and that he has not met the basic criteria for the

27   catalyst theory.

28   //

89CV0820

**a. Successful Party**

As the City correctly points out, the threshold requirement for a fee award under § 1021.5 is that the party is "successful." <u>Schmier v. Supreme Court</u>, 96 Cal. App. 4th 873, 877 (2002). The term "successful" as used in § 1021.5 is synonymous with "prevailing." <u>Id</u>.   However, a favorable final judgment is not required for a party to be designated "successful" under § 1021.5. <u>Schmier</u>, 96 Cal. App. 4th at 878; <u>Graham v. DaimlerChrysler Corp.</u>, 34 Cal. 4th 553, 565-66 (2004); <u>Maria P. V. Riles</u>, 43 Cal. 3d 1281 (1987).[1]   The critical inquiry is the "impact of the action." <u>Schmier</u>, 96 Cal. App. 4th at 877.   The trial court must realistically assess, from a practical standpoint, whether the action "served to vindicate an important right so as to justify a fee award." <u>Id</u>.   This inquiry is "intensely factual" and requires the trial court to look "outside the merits" and "focus on the condition the fee claimant sought to change." <u>Id</u>.   The court looks to the outcome of the litigation and asks if the "claimant's efforts contributed in a significant way" to the change in the condition. <u>Id</u>.

The condition that Mr. Paulson sought to change was the enforcement of the injunction that prohibited the Mount Soledad cross to remain on City property.  It had already been decided that the presence of the Latin cross, a sectarian symbol, on the City's property, violated the California Constitution.  This Court issued an injunction, ordering the City to remedy this constitutional violation.  The City delayed remedying that violation for many years.  Finally, after many delay tactics and political maneuvering that were clearly efforts to "save the cross," this Court ordered that its original injunction be enforced on May 3, 2006.   At the last minute, the federal government stepped in and took the Mount Soledad cross and memorial by eminent domain, which mooted the enforcement order.  Now, for the moment, though the need to enforce the injunction has been obviated, the original constitutional concerns, that a Latin cross,

---

[1]

Though not decided under federal law, the Ninth Circuit has held that dismissal due to mootness and vacatur does not "affect the fact that for the pertinent time period appellees obtained the desired relief"and claimants were entitled to a fee award. <u>Paulson v. City of San Diego</u>, 475 F.3d 1047, 1049 (9th Cir. 2007) (<i>quoting</i> <u>Williams v. Alioto</u>, 625 F.2d 845 (9th Cir. 1980)).

89CV0820

1    the preeminent symbol of Christianity, does not stand on City property, have been remedied.

2    The Court is convinced nothing would have been done to cure those constitutional problems

3    nor remedy the situation but for the continuous and persistent efforts of Mr. Paulson.  Hence,

4    Mr. Paulson did obtain the result he sought, that this Court order the enforcement of the original

5    injunction even though that order was eventually mooted by the federal government taking the

6    property.  Accordingly, the Court finds that Mr. Paulson is the successful party for the purposes

7    of § 1021.5.

8        **b. Catalyst Theory**

9        Mr. Paulson also asserts that the catalyst theory provides further support for awarding him

10   attorney fees.  The catalyst theory is a pragmatic application of the principal that courts are to

11   "look to the practical impact of the public interest litigation in order to determine whether the

12   party was successful, and therefore eligible for attorney fees." <u>Graham</u> 34 Cal. 4th at 567.[2]  The

13   plaintiff may be considered "successful" if the lawsuit was a catalyst in motivating defendants

14   to modify their behavior. <u>Id</u>.  To be eligible for attorney fees under § 1021.5, the plaintiff, 1)

15   must be a catalyst to the defendant's changed behavior, 2) the lawsuit must have some merit,

16   and 3) the plaintiff must have engaged in a reasonable attempt to settle prior to litigation.

17   <u>Graham</u>, 34 Cal. 4th at 561.

18       As stated above, the Court is convinced that but for the consistent and persistent efforts of

19   Mr. Paulson to enforce the injunction nothing would have been done to cure the constitutional

20   ills that surrounded the Mount Soledad cross sitting on public City property.  The City tries to

21   argue that it did not change its behavior, that it was the federal government's taking of the land

22   that altered the landscape of this litigation.  However, if Mr. Paulson had not persisted for so

23   many years throughout all the City's maneuvers until this Court ordered the injunction

24

25       [2]

26   Although the Supreme Court disapproved the catalyst theory in <u>Buckhannon Board and Car Home,</u>

27   <u>Inc. V. West Virginia Dept. Of Health and Human Resources</u>, 532 U.S. 598 (2001), The California
     Supreme Court subsequently endorsed the catalyst theory in <u>DaimlerChrysler</u> and tailored the

28   standards in applying the catalyst theory in answer to the Supreme Court's concerns.

4                                                                                          89CV0820

1 enforced, the federal government would not have stepped in to take the land.  The sponsor of

2 the bill in the House, the sponsor of the bill in the Senate, the Administration and the Mayor of

3 the City all state on legislative record that the federal legislation was proposed as a direct

4 response to this Court's May 6, 2006 order to enforce the injunction.  For example,

5 Congressman Duncan Hunter wrote to the President requesting condemnation proceedings and

6 stated "this matter deserves your urgent attention as a District Judge recently ruled that the Mt.

7 Soledad Memorial Cross must be removed from City property within 90 days, or the City will

8 face a daily fine of $5,000.00."  The mayor of San Diego, Mayor Jerry Sanders, also lobbied the

9 President to exercise the powers of eminent domain to avoid this Court's injunction.  Mayor

10 Sanders wrote the President stating that this Court ordered the removal of the cross within 90

11 days and supported Congressman Hunter's recommendation that the federal government take

12 the property on which the Mt. Soledad cross stands.  Hence, it is clear to this Court that it was

13 Mr. Paulson's persistent efforts and lawsuit that was the impetus in the federal government

14 taking the land and changing the course of this litigation.

15 The second factor, that the lawsuit has some merit is obvious.  The lawsuit was brought

16 to cure a fundamental constitutional violation.  Once the injunction was obtained, Mr. Paulson

17 doggedly continued for several years until this Court ordered that the original injunction be

18 enforced.  There is no question in the Court's mind that the lawsuit had merit.

19 Finally, the third factor, that the Plaintiff try to settle the lawsuit prior to litigation has

20 also been met.  At one point in time, Mr. Paulson had secured a settlement agreement with the

21 City, which included a waiver of fees.  (Plaintiff's Motion at 1-4; Defendant's Opposition at 2)

22 At the last minute, the City backed out of the proposed settlement agreement. (Plaintiff's

23 Motion at 4-5; Defendant's Opposition at 2-3). It is clear to this Court that Mr. Paulson has

24 been diligent in trying to secure a settlement rather than prolong the litigation.  Hence this

25 factor is met.

26 **c. Other Private Attorney Doctrine Requirements**

27 Although the City does not argue that the remaining factors of the Private Attorney

28 doctrine have not been met, the Court will address them briefly here.

1    The second factor is that the lawsuit resulted in the enforcement of important rights

2    affecting public interest.  Upholding and enforcing the Constitution, whether it is the federal or

3    state constitution is always an important right that affects public interest.

4    The third factor is that a significant benefit was conferred on the public.  Again,

5    defending and upholding the Constitution is always a significant benefit to the public.

6    Everyone benefits when the rights enumerated in the Constitution are preserved, even if it

7    appears to be unpopular at the time.

8    The fourth prong is also met, that the necessity and financial burden of private

9    enforcement favor the award of fees.  In this case, the lawsuit was against the City, a public

10   entity.  It has been abundantly clear to this Court that the City was not going to remedy the

11   constitutional problems of its own accord.

12   Finally, the last prong, that attorneys' fees should not be paid out of plaintiff's own

13   recovery.  There was no pecuniary relief claimed or awarded in this case.

14   **d. Conclusion**

15   In conclusion, the Court finds that Mr. Paulson was the successful party for the purposes

16   of § 1021.5 and that the catalyst theory further supports this finding.

17   **C. Calculation of Attorney's Fees**

18   Under California law there are two methods for calculating attorney's fees for civil rights

19   actions, the lodestar/multiplier method and the percentage of recovery method.  Wershba v.

20   Apple Computer, Inc., 91 Cal. App. 4th 224, 254 (2001).  The lodestar/multiplier method is

21   utilized for calculating fees pursuant to § 1021.5.  With this method, the lodestar is calculated

22   by multiplying the reasonable hours expended by a reasonable hourly rate.  Id.  If appropriate,

23   the court may then enhance the lodestar with a multiplier.  Id.  Under California case law, fee

24   awards are permitted without supporting detailed time sheets.  Wershba, 91 Cal. App. 4th at

25   255; Sommers v. Erb, 2 Cal. App. 4th 1644, 1651 (1992);  Rebney v. Wells Fargo Bank, 232

26   Cal.App. 3d 1344, 1349 (1991). Declarations of the attorney establishing the number of hours

27   worked and the hourly rate is sufficient to support an award of attorney's fees.  Wershba, 91

28   Cal.App. at 255; Rebney, 232 Cal. App. at 1349.  An experienced trial judge is in the best

6

89CV0820

1  position to assess the value of services rendered in his or her court. <u>Wershba</u>, 91 Cal. App. at

2  255; <u>Serrano v. Priest</u>, 20 Cal.3d 25, 49 (1977). A trial judge's assessment of reasonable

3  attorney's fees will not be disturbed on appeal unless it is clearly wrong. <u>Id</u>.

4  **a. Lodestar Calculation**

5  In this case Mr. James McElroy ("Mr. McElroy") submitted a declaration *sworn under*

6  *penalty of perjury* stating the number of hours worked and the hourly rate for both himself and

7  his associate, Shannon Nugent. (Declaration, Motion Exhibit 1) Mr. McElroy also submitted a

8  copy of curriculum vitae evidencing both his litigation experience and expertise to support his

9  claim. Based on the Court's intimate knowledge and review of the case, the Court finds that

10 Mr. McElroy's claim for both hours worked and hourly rate are reasonable. Therefore, the total

11 lodestar is calculated as follows:

12       James McElroy:      1104.65 hours x $400 per hour = $ 441,860.00

13       Shannon Nugent     183.7   hours x $275 per hour = $  50,517.00

14       Total Lodestar                $ 492,377.00

15 This total lodestar figure includes $ 469,474.50 for attorney's fees on the merits and

16 $ 22,902.50 in attorneys' fees for litigating attorney's fees.

17 **b. Multiplier Calculation**

18 Under California law, the lodestar is considered the basic fee for comparable legal

19 services in the community. <u>Graham v. DaimlerChrysler</u>, 34 Cal. 4th 553, 579 (2004) *citing*,

20 <u>Serrano v. Priest</u>, 20 Cal.3d 25 (1977). The court may adjust the lodestar with a multiplier

21 based on several factors, including: 1) the novelty and difficulty of the question involved, 2) the

22 skill displayed in presenting them, 3) the extent that litigation precluded other employment, and

23 4) the contingent nature of the fee award. <u>Id</u>. Under California law, a multiplier may be added

24 on fees for fee-related litigation. <u>Id</u>. at 581. For the reasons stated below, the Court applies a

25 multiplier of 2 on the underlying litigation lodestar and no multiplier for the fees on the fee

26 litigation lodestar.

27 Mr. Paulson asserts he is entitled to a multiplier of 3 based on all the above factors. The

28 Court agrees that each of the factors weigh in Mr. Paulson's favor, just not to the same extent.

89CV0820

1     For example, the first factor is the novelty and difficulty of the question involved.  Mr. Paulson

2     claims that the constitutional questions were complex.  The Court disagrees that the underlying

3     issues were unusually difficult or complex.  The constitutionality of a sectarian symbol on

4     public property has been litigated many times with much relevant law on the subject.  However,

5     the Court does find that this case was very difficult in that Mr. Paulson had to contend with the

6     City's various ploys to circumvent this Court's order. There were numerous settlement

7     negotiations and conferences, motions on the ownership of the cross, motions to enforce the

8     settlement agreement, motions to enforce the injunction, appellate briefing and mediations, and

9     oppositions to emergency stays to both the Ninth Circuit and the Supreme Court.  The difficulty

10    in this case lay in the many unexpected twists and turns it took as the City tried to delay

11    complying with this Court's order. Hence, the first factor does weigh in favor of a multiplier.

12        The second factor is the skill in presenting the various relevant legal arguments.  The

13    Court was impressed with the efforts and the skill of Mr. McElroy in representing his client and

14    accurately presenting the relevant law on the various issues. Hence, this factor weighs in favor

15    of a multiplier.

16        The third factor is that the litigation precluded other employment.  The Court is aware

17    that the present litigation involved extensive settlement conferences and many last minute

18    filings of emergency briefing.  The course of the litigation changed continually as the City

19    altered its tactics.  This was indisputably time consuming and took away from representing

20    other clients.  Additionally, this was an extremely unpopular and highly publicized case.  Mr.

21    McElroy asserts that he lost potential clients because of this case. (Motion at 21-22).  Hence,

22    this factor also favors a multiplier.

23        The fourth factor considers the contingent nature of the fee award.  The court in

24    DaimlerChrysler stated that "[t]he contingent fee compensates the lawyer not only for the legal

25    services he renders but for the loan of those services. . . .A lawyer who bears the risk of not

26    being paid and provides legal services is not receiving fair market value of his work if he is paid

27    only for the second of these functions." Graham v. DaimlerChrysler, 34 Cal. 4th at 580 (*citing*

28    Ketchum v. Moses, 24 Cal.4th 1122 (2001)).  This is the factor that most favors an addition of a

1   multiplier. No one expected the many twists and turns of this litigation, least of all Mr.

2   McElroy. For four years he has persistently pursued the City through a near settlement and

3   various attempts to divest itself of the property with no assurance of either winning or being

4   paid. Clearly Mr. McElroy bore the risk of not being paid for four years of hard work. Hence,

5   this factor also favors a multiplier.

6       Applying these same factors to the litigation for fees, the Court does not find that a

7   multiplier is appropriate. There are no novel or difficult questions that require special skill in

8   presenting the motion for attorney's fees. Also, the fee litigation has been relatively straight

9   forward and should not have precluded other employment. Finally, although there is some

10  contingency risk involved, the Court does not think it is high enough to merit a multiplier.

11  **c. Conclusion**

12      In conclusion, the Court finds that a multiplier of 2 is appropriate on the underlying

13  litigation and no multiplier is added for the fees on fees litigation. Mr. Paulson is also entitled

14  to payment for any costs involved. Accordingly, the fee award is as follows:

| | |
|---|---|
| Lodestar for underlying litigation | $ 469,474.50 |
| Multiplier of 2 | $ 938,949.00 |
| Lodestar for fee litigation | $  22,920.50 |
| Costs | $     821.78 |
| Total Award | $ 962,691.28 |

20  Accordingly,

21      **IT IS ORDERED** that the total fee award is $ 962,691.28.

22      **IT IS FURTHER ORDERED** that these fees are to be paid directly to Mr. McElroy.

June 13, 2007
date

GORDON THOMPSON, JR.
United States District Judge

27  cc: All counsel and parties without counsel

89CV0820